**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ALVIN FIELDS, ALLEN CAMPBELL, | ) | |
| J.R. PRYOR, JR., and ROBERT MOSBY, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| vs. | ) | CASE NO. 1:07-cv-6894 |
| | ) | |
| LYON WORKSPACE PRODUCTS, | ) | Judge Lefkow |
| LLC, LYON WORKSPACE PRODUCTS, | ) | |
| LLC HOURLY RETIREES HEALTH | ) | |
| PLAN, and L&D GROUP, INC. | ) | |
| | ) | |
| Defendants. | ) | |

## ANSWER TO COMPLAINT AND COUNTERCLAIM

COME NOW Defendants, Lyon Workspace Products, LLC, Lyon Workspace Products,

LLC Hourly Retirees Health Plan, and L&D Group, Inc. (hereinafter "Defendants"), by counsel,

and respond to Plaintiff's Complaint as follows:

### JURISDICTION AND VENUE

1.      This is an action brought by Alvin Fields, Allen Campbell, J.R. Pryor, Jr., and

Robert Mosby, retired employees of the Lyon Workspace Products manufacturing plant in

Aurora, Illinois.  The named plaintiffs other than plaintiff Mosby bring this action on behalf of

themselves.  All named plaintiffs other than plaintiff Mosby also bring this action on behalf of all

other retirees similarly situated.  Plaintiffs seek to enforce the terms of the 2005 Insurance

Agreement entered into between their collective bargaining representatives and defendant Lyon

Workspace Products ("Lyon"), and to enforce Sections 404, 406, 409, and 502(a) of the

Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1104,

1106, 1109, and 1132(a), and Section 301 of the Labor Management Relations Act of 1947, as

amended ("LMRA"), 29 U.S.C. 195.  This action arises under the laws of the United States, specifically Section 502 of ERISA, 29 U.S.C. § 1132(a), and Section 301 of the LMRA, 29 U.S.C. § 185.  Jurisdiction is therefore conferred on this Court pursuant to Section 502(e)(1) of ERISA, 29 U.S.C. § 1132(e)(1); Section 301 of the LMRA, 29 U.S.C. § 185(a); and 28 U.S.C. § 1331 and § 1337.

**ANSWER:  Defendants admit that the Court has jurisdiction and that Plaintiffs have attempted to make claims on their own behalf and on an behalf of those alleged to be similarly situated.  Defendants deny the remaining allegations contained in paragraph 1 and specifically deny Plaintiffs are entitled to class certification or any relief.**

2.      Lyon operates a manufacturing plant in Aurora, Illinois.  Lyon is a subsidiary of L&D Group, Inc., which owns 100% of its capital stock.  Lyon and, on information and belief, L&D Group, Inc. participate in the management and administration of the Lyon Workspace Products, LLR Hourly Retirees Health Plan ("Lyon Plan"), a collectively bargained employee benefit plan which has provided, and continues to provide, benefits to retirees in this District. The cause of action arose substantially from Defendants' transaction of business in this District. Venue therefore lies in this Court pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2); pursuant to 29 U.S.C. § 185(a); and pursuant to 28 U.S.C. § 1391(b).

**ANSWER:  Defendants admit that venue is proper in this Court.  Defendants deny the remaining allegations contained in paragraph 2.**

## PARTIES

3.      Alvin Fields resides at 2430 Nan Street, Aurora, Illinois, 60502.  Mr. Fields was employed by Lyon at the Aurora plant for approximately 45 years until he retired from the company in 2002.  While employed at Lyon, Mr. Fields was a member of USW Local 1636, United Steelworkers of America (currently known as "USW Local 1636").  Mr. Fields was eligible to participate, and did participate, in the Lyon Plan until approximately August 2007, when he no longer could afford the employee contributions demanded of him, and he was terminated from the Lyon Plan.

**ANSWER:  Defendants admit that Alvin Fields was employed by Lyon and was a participant in the Lyon Plan.  Defendants are without sufficient knowledge or information, at present, to enable them to either admit or deny the remaining allegations contained in paragraph 3.**

4.      J.R. Pryor, Jr. resides at 814 North View Street, Aurora, Illinois, 60506.  Mr. Pryor was employed by Lyon at the Aurora plan for approximately 40 years until he retired from the company in 2005  while employed at Lyon, Mr. Pryor was a member of USW Local 1636.  Mr. Pryor was eligible to participate, and did participate, in the Lyon Plan at no cost until June 2007, when he could not afford the employee contributions demanded of him, and he was terminated from the Lyon Plan.

**ANSWER:  Defendants admit that J. R. Pryor, Jr. was employed by Lyon and was a participant in the Lyon Plan.  Defendants are without sufficient knowledge or information, at present, to enable them to either admit or deny the remaining allegations contained in paragraph 4.**

5.     Allen Campbell resides at 1661 Solfisburg, Aurora, Illinois, 60505.  Mr. Campbell was employed by Lyon at the Aurora plant for 36 years until he retired from the company in 2001.  While employed at Lyon, Mr. Campbell was a member of USW Local 1636. Mr. Campbell was eligible to participate, and did participate, in the Lyon Plan until June 2007, when he no longer could afford the employee contributions demanded of him, and he was terminated from the Lyon Plan.

**ANSWER:  Defendants admit that Allen Campbell was employed by Lyon and was a participant in the Lyon Plan.   Defendants are without sufficient knowledge or information, at present, to enable them to either admit or deny the remaining allegations contained in paragraph 5.**

6.     Robert Mosby resides at 603 Spring Street, Aurora, Illinois, 60505.  Mr. Mosby was employed by Lyon at the Aurora plant for over 40 years until he retired from the company in May 2007. While employed at Lyon, Mr. Mosby was represented in collective bargaining by USW Local 1636.  An hourly retiree of Lyon, Mr. Mosby was eligible to participate in the Lyon Plan at no cost until April 2008.  Mr. Mosby did not participate in the Lyon Plan because Defendants required payment of contributions Mr. Mosby could not afford as a condition of joining and participating in the Lyon Plan.

**ANSWER:  Defendants admit that Robert Mosby was employed by Lyon. Defendants are without sufficient knowledge or information, at present, to enable them to either admit or deny the remaining allegations contained in paragraph 6.**

7.     Defendant Lyon is a limited liability company with its principal place of business in Illinois.  It is the successor, by virtue of firm reorganizations, to Lyon Metal Products, Inc. and Lyon Metal Products, L.L.C.   Hereinafter all references to "Lyon" are to Lyon Workspace

Products, L.L.C. and all of its predecessors and successors.  Defendant Lyon is the plan sponsor and plan administrator of the Lyon Plan.

**ANSWER:  Defendants admit the material allegations contained in paragraph 7.**

8.     Defendant L&D Group, Inc. is a corporation with its principal place of business in Illinois.  It is the successor of a corporation known as the Lyon Holding Co., and has also been known as the Lyon & Dittrich Holding Company.  Defendant Lyon is a wholly owned subsidiary of L&D Group, Inc.  Hereinafter all references to "L&D Group" are to L&D Group, Inc., and any of L&D's predecessors or successors.  On information and belief, L&D Group also exercises discretion in the administration of the Lyon Plan.

**ANSWER:  Defendants admit the allegations concerning the predecessors to L & D Group, Inc. and Lyon's relationship to L & D Group, Inc. Defendants deny the remaining allegations contained in paragraph 8 and specifically deny that L & D Group, Inc. had any involvement in sponsoring, establishing, or administering the Lyon Plan.  They further deny that L & D Group, Inc. was a fiduciary or ever attempted to exercise discretion in regards to the Lyon Plan.**

9.     Defendant Lyon Plan provides, through a component "Program," the benefits to which the named plaintiffs and other eligible Lyon retirees are entitled.   Lyon Plan is an employee welfare benefit plan as defined by, and subject to, ERISA, 29 U.S.C. § 1002(1).  Its administrative offices are in Aurora, Illinois.

**ANSWER:  Defendants admit that Lyon Plan is an employee welfare benefit plan governed by ERISA.  Defendants deny the remaining allegations contained in paragraph 9.**

**FACTS**

10.     Defendant Lyon has manufactured lockers, storage cabinets, and metal shelving at its Aurora plant since approximately 1901.  Defendant Lyon is an employer in an industry affecting interstate commerce and has been an employer of all the named plaintiffs.

**ANSWER:  Defendants admit that Lyon employed Plaintiffs and that it is engaged In interstate commerce.   Defendants deny the remaining allegations contained in paragraph 10.**

11.     Since before 1999, USW Local 1636 has served as the collective bargaining representative for most classifications of employees in hourly jobs in Lyon's Aurora plant.

**ANSWER:  Defendants are without sufficient knowledge or information, at present, to enable them to either admit or deny the allegations contained in paragraph 11.**

12.     Lyon and USW Local 1636 have entered into collective bargaining agreements regarding, *inter alia*, rates of pay, hours of work, conditions of employment, and job security at the Aurora plant.

**ANSWER:   Defendants admit that Lyon and the USW entered into collective bargaining agreements the terms of which are set forth in written documents that speak for themselves and are the best evidence of their contents.   Defendants deny the remaining allegations contained in paragraph 12.**

13.     Among the collective bargaining agreements that Lyon and USW Local 1636 have entered into are a series of "Insurance Agreements."  These agreements cover the terms of certain benefits – including *inter alia* medical and prescription drug benefits – provided by Lyon to current and retired bargaining unit employees represented by USW Local 1636.   The Insurance Agreements are agreements between an employer and a labor organization under LMFR § 301, 29 U.S.C. § 185.

**ANSWER:  Defendants admit that the Insurance Agreements are set forth in one or more written documents that speak for themselves and are the best evidence of their contents.  Defendants deny the remaining allegations contained in paragraph 13.**

14.     The medical and prescription drug benefits promised to the plaintiffs and other retirees are provided in accordance with the Lyon Plan, an employee welfare benefit plan within the meaning of ERISA § 2, 29 U.S.C. § 1002, and through a component of the Lyon Plan that provided plan benefits to hourly retirees of Lyon, which is referred to as the "Program."  The medical and prescription drug benefits provided to participants through the Lyon Plan, including those provided through the Program, are "self funded."  In other words, the cost of the benefits was not guaranteed by insurance contracts purchased by the plan sponsor, but rather benefits were to be paid by the plan directly, funded as necessary by the assets of the plan sponsor, Lyon.

**ANSWER:  Defendants admit that the Lyon Plan and related documents are set forth in one or more written documents that speak for themselves and are the best evidence of their contents.  Defendants further admit that the Lyon Plan was self funded and governed by ERISA.  Defendants deny the remaining allegations contained in paragraph 14.**

15.     Lyon's ultimate financial obligation to pay for the Program benefits is not unlimited, but is subject to an aggregate cap, calculated each year, the precise formula for which was agreed to by the parties in the Insurance Agreements, and which is set out in the Program Summary Plan Description ("SPD").  Specifically, Section 7 of Article I of the Insurance Agreement dated March 6, 1994 ("the 1994 Insurance Agreement") obligated Lyon to provide medical insurance for all members of the bargaining unit represented by USW Local 1636 who were hired prior to February 15, 1988 and who retired on or after March 1, 1965.  In capping the

company's financial obligations for retiree medical insurance, the 1994 Insurance Agreement states in relevant part:

> [T]he Company's Medical contribution for all currently eligible future Retirees (i.e., those hired prior to February 15, 1988) and their dependents and for all current Retirees and dependents who are covered by the program will be frozen as follows:  The total amount of benefits (for <u>all</u> Lyon Retirees) paid per calendar year beginning with 1994 is capped at $750,000,  However, the cap will be adjusted during each year by (1) adding $4,000 for each new retiree who enters the program, and (2) deducting $1,500 for each retiree life (retirees, spouse, or dependent) that leaves the program.  The adjusted cap will be compared with actual plan expenses at the end of the calendar year.  If claims exceed the adjusted cap, current Retirees will be expected to pay a pro rated monthly contribution.  In any year if actual Plan costs are less than the cap, there will be no contribution from Retirees and the Company shall not be required to pay more than the actual Plan costs or make any refunds.

(emphasis in original.)  *See* Exhibit A (1994 Insurance Agreement).

**ANSWER:  Defendants admit that Insurance Agreements, SPD, and related documents are set forth in one or more written documents that speak for themselves and are the best evidence of their contents.  Defendants deny the remaining allegations contained in paragraph 15.**

16.     Lyon and USW Local 1636 re-negotiated the Insurance Agreement every three to four years.  Although the amounts to be added or subtracted from the adjusted cap when retirees enter or leave the Program have changed, the language regarding the existence of the cap, the calculation of the cap, the comparison of the adjusted cap with actual plan expenses at the end of each calendar year, and the responsibility of participants who had participated in the Program in the prior year to make up on a pro rated basis that prior year's shortfall remained the same in subsequently negotiated Insurance Agreements.

**ANSWER: Defendants admit that the Insurance Agreements are set forth in one or more written documents that speak for themselves and are the best evidence of their contents. Defendants deny the remaining allegations contained in paragraph 16.**

17.    Section 7 of Article I of the current version of the Insurance Agreement, effective February 20, 2005 ("2005 Insurance Agreement," attached hereto as Exhibit B), states:

> In addition, the Company's Medical contribution for all currently eligible future Retirees (i.e., those hired prior to February 15, 1988) and their dependents and for all current Retirees and dependents who are covered by the program will be frozen as follows:  The total amount of benefits (for <u>all</u> Lyon Retirees) paid per calendar year beginning with 1994 is capped at $750,000.  However, the cap will be adjusted during each year by (1) adding $4,750 (effective 2/17/01) for each new retirees who enters the program, and (2) deducing $1,250 (effective 2/17/01) for each retiree life (retirees, spouse, or dependent) that leaves the program.  The adjusted cap will be compared with actual plan expenses at the end of the calendar year.  If claims exceed the adjusted cap, current Retirees will be expected to pay a pro rated monthly contribution.  In any year if actual Plan costs are less than the cap, there will be no contribution.  In any year if actual Plan costs are less than the cap, there will be no contribution from Retirees and the Company shall not be required to pay more than the actual Plan costs or make any refunds.  In the event that the Federal government changes the Medicare program (or other government program for Retirees) in such a fashion as to affect these caps, the parties will meet promptly for the purpose of adjusting the caps to conform to the changes in the Medicare (or other government) program.  In no event shall an employee who is eligible for a Deferred Vested Pension qualify for any benefits under the Lyon Group Insurance Plan.

The 2005 Insurance Agreement is effective and binding on Lyon and USW Local 1636 until February 15, 2009, and shall continue from year to year unless either party within 60 days prior to the anniversary date provides notice to the other of its desire to modify, change, or terminate the Insurance Agreement.

**ANSWER: Defendants admit that the Insurance Agreement is set forth in writing and speak for itself and is the best evidence of its contents.  Defendants deny the remaining allegations contained in paragraph 17.**

18.     The Program is described in greater detail in the SPD.  The SPD (attached hereto as Exhibit C) is a plan document.  Section 3 of the SPD, as revised January 6, 2004, is titled "Future Cost Sharing," and describes the calculation of the cap amount, the determination of the difference between the cap amount and actual plan expenses, and the retirees' obligation to pay for the difference generated in the previous year as follows:

> Effective January 1, 1994, the dollar amounts of Lyon's contributions to retiree medical care costs were frozen.  This means that in any given year, Lyon will not pay any more than an annually adjusted cap for that calendar year for all medical benefit claim costs for all retirees (including salaried retirees, retirees from other plan locations, and Aurora hourly retirees).  In 1994, the cap was $750,000.  This figure has been adjusted each year by (1) adding $4,000 for each new retiree who enters the Program and (2) deducting $1,500 for each retiree, spouse or dependent who leaves the Program.

> Effective January 1, 2002, $4,750 will be added for each new retiree entering the Program and $1,250 will be deducted for each retiree, spouse or dependent who leaves the Program.

> At the end of each calendar year, the adjusted cap is compared to actual retiree plan expenses.  If medical costs exceed the adjusted cap, all current retirees with coverage will be required to make a contribution to the Program in order to maintain coverage.  You will be billed for this contribution and allowed to pay it over the next plan year; you will be allowed to choose semiannual, quarterly or monthly payments.  In any year in which claim costs do not exceed the cap, there will be no contribution required, nor will there be any refunds from Lyon.

**ANSWER:  Defendants admit that Exhibit C is an SPD Supplement that is set forth in writing and speaks for itself and is the best evidence of its contents.  Defendants deny the remaining allegations contained in paragraph 18.**

19.     Beginning with the adoption of the 1994 Insurance Agreement, Lyon was required to and did calculate annually the cap on its annual plan contributions and the participant contributions required under the terms of the successive Insurance Agreements and the Program. In February or March of each calendar year, Lyon notified the union and the retirees participating in the Program of the aggregate employer contribution cap for the current year, as

well as the participant contributions Lyon would impose on participants to maintain coverage under the Program ("pro rated contributions"), an amount calculated based on the difference between the cap for the previous year and the amount of medical and prescription claims made under the Program during that year by retirees participating in the program, then divided by the number of participants in the Program as of December 31 of that previous year. These letters also showed the calculations that would determine the cap amount for the current calendar year. Prior to May 2007, the named plaintiffs, except for plaintiff Mosby (who retired in 2007), all were required to pay – and did pay – pro rated contributions to maintain coverage under the Program.

**ANSWER: Defendants admit that calculations were performed regarding the cap and required contributions and that the letters were set forth in one or more written documents that contain the best evidence of their contents. Defendants determined that participant obligations were more than the amounts reflected in some of the letters and/or calculations. The participants were notified that additional amounts were due and owing in accordance with the terms of the Lyon Plan, Insurance Agreements and related documents. Defendants deny the remaining allegations contained in paragraph 19.**

20. Pursuant to the Insurance Agreements and the SPD, Lyon is required to, and prior to May 2007 did, base its calculation of the pro rated contribution amount exclusively on the difference between the actual retiree plan expenses or medical claim costs of the immediately-previous year and the applicable cap for that year.

**ANSWER: Defendants deny the allegations contained in paragraph 20.**

21. Pursuant to the Insurance Agreements and the SPD, Lyon is required to, and prior to May 2007 did, calculate the difference between the actual costs of the program and the

applicable cap, and set the pro rated contribution applicable to the Program year based on the number of participants in the Program as of the last day of the prior calendar year. Neither the collectively bargained Insurance Agreements nor the Lyon Plan and Program documents allow Lyon to increase that year's pro rated contribution once it has been set based on the cap, expenses, and number of participants in the prior Program year. Between 1994 and 2007, once the pro rated contribution was established Lyon never adjusted that contribution rate in any year, and did not attempt to increase or otherwise change the amount of the pro rated contributions that had been set for that year.

**ANSWER: Defendants deny the allegations contained in paragraph 21.**

22.     Pursuant to the Insurance Agreements and the SPD, Lyon was entitled to collect, and prior to 2007 only sought to collect, pro rated contributions from the current retirees who participated in the Program in the year for which Lyon's expenses were calculated to have exceed the agreed-to cap on Lyon's funding of medical benefits.

**ANSWER: Defendants deny the allegations contained in paragraph 22.**

23.     Lyon's practices from 1995 to May 2007 were communicated to USW Local 1636 by Lyon, and the parties to the Insurance Agreements understood that Lyon's practices in calculating and assessing contributions were consistent with the Insurance Agreements.

**ANSWER:    Defendants admit that they communicated information that was memorialized in written documents that speak for themselves and are the best evidence of their contents. Defendants deny the remaining allegations contained in paragraph 23.**

24.     On March 16, 2007, Lyon sent a letter to the union regarding the actual claim costs of the Program for 2006 and the relationship of those costs to the negotiated "cap." This

letter stated that the cost of medical and prescription claims for 2006 had been $840,230.89, which was $271,480.89 more than the 2006 cap of $568,750.00.  The letter then stated:

> According to our agreement, the amount that Retiree medical costs exceed the cap are to be shared by all Retirees on the Plan by paying a pro rated contribution.  On December 31, 2006, we had 106 Retirees on the Plan, therefore, the monthly contribution will be $213.42.  We plan to inform the Retirees in a letter being sent out on March 16, 2007, with the first payment due in April 2007.  The $213.42 per month payments will continue through March 2008.

*See* Exhibit D ("March 16, 2007 Letter").

**ANSWER:  Defendants admit that the March 16, 2007 letter is set forth in writing and speaks for itself and is the best evidence of its contents.  Defendants deny the remaining allegations contained in paragraph 24.**

25.     On March 16, 2007, Lyon also sent a similar letter to participants in the Lyon Plan, including all the named plaintiffs except plaintiff Mosby.  This letter describes the calculation that had been made regarding the difference between the costs incurred by the Lyon Retirees Health Plan in 2006 and the 2006 cap, and stated that the pro rated contribution for the coming Program year would be $2,561.04 for each participating retiree.  The letter notified the participants that they would be required to make 12 monthly payments of $213.42 beginning on April 15, 2007, or that they could make the pro rated payments on a quarterly, semi-annual, or annual basis.  *See* Exhibit E ("March 2007 Letter").

**ANSWER:  Defendants admit that the March 16, 2007 letter is set forth in writing and speaks for itself and is the best evidence of its contents.  Defendants deny the remaining allegations contained in paragraph 25.**

26.     Retiree participants in the Program, including all the named plaintiffs other than plaintiff Mosby, made the pro rated contributions demanded in the March 2007 letter, and continued to be participants in the Lyon Plan and eligible for benefits through the Program.

**ANSWER:  Defendants deny the allegations contained in paragraph 26.**

27.      On May 17, 2007, Lyon sent a letter to all Lyon retirees eligible to participate in the Program.  *See* Exhibit F ("May 2007 Letter").  After reviewing the manner in which the pro rated contributions had been calculated on an annual basis in past years, the May 2007 Letter asserted that a recently completed "audit of the collections of Retiree Payments and Actual Claims Paid back to the year 2001" showed that there had been a "shortfall" of $340,073.14 in the amount paid by the retirees to Lyon.  The May 2007 Letter indicated that, during the audit, Lyon discovered that this "shortfall" was due to (i) participants who were paying their pro-rated contribution on a monthly, quarterly, or semi-annual basis dying or opting out of the Program before making all their payments for a given year, (ii) Lyon's practice of not charging the pro-rated contribution to participants during their first year participating in the Program, and (iii) "certain amounts for additional insurance purchased by [Lyon] and/or rebate program in which the Company participates, were being improperly deducted from the total claims paid amount of the time of the cap calculation."

**ANSWER:  Defendants admit that the March 17, 2007 letter is set forth in writing and speaks for itself and is the best evidence of its contents.  Defendants deny the remaining allegations contained in paragraph 27.**

28.      The May 2007 Letter stated that the $340,073.14 "shortfall . . . will be shared by all current retirees participating in the plan" during the year between April 2007 and March 2008.  While the March 2007 Letter set the annual pro rated contribution based on the 2006 Program year at $2,561.04 (with monthly payments of $213.42), the May 2007 Letter purported to require each participant in the Program to contribute $5,937.32 for the 2006 Program year. The May 2007 stated that, assuming the April 15 and May 15, 2007 payments were made, every

eligible retiree (including those new retirees who had not participated in the Program in the 2006 Program year), in order to maintain coverage, would be required to make a single contribution of $3,376.28 in addition to the monthly payments of $213.42 set in the March Letter.  Alternatively, Program participants and eligible retirees would be permitted to maintain (or obtain) coverage by making a payment of $1,057.50 by June 15, 2007, and monthly payments of $494.78 thereafter.

**ANSWER:  Defendants admit that the May 17, 2007 letter is set forth in writing and speaks for itself and is the best evidence of its contents.  Defendants deny the remaining allegations contained in paragraph 28.**

29.    The May 2007 Letter noted that Lyon had audited the "shortfall" only back to 2001, and that "[i]t is believed that the total shortfall could be even higher if the program was audited back to its inception in 1994"; Lyon specifically reserved its "right to audit the program back to 1994 and impose additional "shortfalls" on the retirees.  The May 2007 Letter concluded by encouraging the participating retirees to engage in a "cost/benefit analysis to determine if you want to continue to participate in our plan," and provided the address of a federal government website listing alternative programs.

**ANSWER:  Defendants admit that the May 17, 2007 letter is set forth in writing and speaks for itself and is the best evidence of its contents.  Defendants deny the remaining allegations contained in paragraph 29.**

30.    The named plaintiffs and the other participating retirees live on fixed, and limited, incomes.  Many Program participants, including named plaintiffs Pryor and Campbell, could not afford the increased pro rated contributions demanded by Lyon in the May 2007 Letter.

**ANSWER:  Defendants are without sufficient knowledge or information, at present, so as to enable them to either admit or deny the allegations contained in paragraph 30.**

31.    Approximately 103 retirees participated in the Program as of the May 2007 letter. Plaintiff Mosby and, on information and belief, other retirees became or will become eligible to participate in the Program during 2007.  As a result of Defendants' demand for increased pro rated contributions in the May 2007 letter, within the next nine weeks approximately forty percent of the retirees were terminated from the Lyon Plan for non-payment of contributions, including plaintiffs Pryor and Campbell.

**ANSWER:  Defendants admit there were approximately 103 participants at the start of May 2003.  Defendants deny the remaining allegations contained in paragraph 31.**

32.    On July 20, 2007, Lyon notified participants in the Program by letter of yet additional contribution requirements.  *See* Exhibit G ("July 2007 Letter").  The July 2007 Letter notified the plan participants that Lyon had again recalculated the pro rated contributions owed by each participating retiree, taking into account the decrease in plan enrollment and the attendant increase in each retiree's pro rated share which resulted form the termination of nearly two-fifths of the participants from the plan.  The July 2007 Letter notified the remaining participants that in order to maintain coverage each would be required to pay $779.77 per month beginning on August 15, 2007 and, in addition, would be required to make increased retroactive payments for prior months.  The July 2007 Letter stated that the increase in pro rated contributions due to participants dropping out of the Plan in the future," and again encouraged participating retirees to explore other health insurance alternatives.

**ANSWER:  Defendants admit that the July 20, 2007 letter is set forth in writing and speaks for itself and is the best evidence of its contents.  Defendants deny the remaining allegations contained in paragraph 32.**

33.    As a result of the increased pro rated contributions required by the July 2007 Letter, approximately two-thirds of the remaining retirees participating in the Lyon Plan as of July 20, 2007 were terminated from the Lyon Plan for non-payment of contributions, including plaintiff Fields.

**ANSWER:  Defendants admit that several participants withdrew from the Lyon Plan as of July 20, 2007.  Defendants deny the remaining allegations contained in paragraph 33.**

34.    On August 21, 2007, Lyon notified the participants of yet another increase in required contributions.  *See* Exhibit H ("August 2007 letter").  The August 2007 Letter notified the plan participants that Lyon had recalculated the pro rated contributions owed by each participating retiree, taking into account the decrease in plan enrollment and the attendant increase in each retiree's pro rated share which resulted from the termination of nearly ninety percent of the participants from the plan.  The August 2007 Letter notified the remaining 17 participants that in order to maintain coverage each would be required to pay $3,692.93 per month beginning by September 15, 2007.

**ANSWER:  Defendants admit that the August 21, 2007 letter is set forth in writing and speaks for itself and is the best evidence of its contents.  Defendants deny the remaining allegations contained in paragraph 34.**

35.    The named plaintiffs who were participating in the Program as of the date of the May 2007 Letter have all been terminated from participation for nonpayment and, on information and belief, all of the approximately 106 retirees participating in the Program as of May 2007 have now been terminated as a result of the ever-increasing pro rated contributions demanded of them by Defendants.  Each of the retiree participants has been required to find

alternative options to fund their medical care and prescription drug needs and more of the costs of the alternative options is paid by Lyon contributions. The effect of May 2007 and August 2007 Letters and the termination of all participants from the Program has been to reduce Lyon's funding obligations under the 2005 Insurance Agreement and the SPD.

**ANSWER: Defendants admit that Plaintiffs and other participants withdrew from the Lyon Plan by declining to pay the required contributions. Defendants deny the remaining allegations contained in paragraph 35.**

## CLASS ALLEGATIONS

36.    The proposed class that plaintiffs, Fields, Campbell, and Pryor seek to represent consists of Lyon retirees and eligible dependents who were participating in the Program as of March 16, 2007, and from whom, beginning in May 2007, additional and increased pro rated contributions were demanded by Lyon and the Lyon Plan to continue participation. Plaintiff Mosby is not a member or representative of the proposed class, but brings his claims in this individual capacity.

**ANSWER: Defendants admit that plaintiffs Fields, Campbell, and Pryor seek class certification. Defendants deny the remaining allegations contained in paragraph 36 and specifically deny that certification of a class is appropriate.**

37.    The proposed class consists of approximately 103 retiree participants and an unknown additional number of eligible dependents. The members of the class are so numerous that joinder of all members as plaintiffs would be impracticable, thus satisfying the requirements of Fed. R. Civ. P. 23(a)(1).

**ANSWER: Defendants deny the allegations contained in paragraph 37.**

38.    Common questions of law and fact exist as to all members of the proposed class and predominate over any question solely affecting individual members of the class, thus satisfying the requirements of Fed. R. Civ. P. 23(a)92).   These common questions include whether Defendants are permitted under the terms of the 2005 Insurance Agreement and the component Program of the Lyon Plan to recalculate the pro rated employee contributions more than once a year, whether, under ERISA and the LMRA, Defendants wrongfully terminated Lyon Plan coverage for those employees who failed to pay the increased pro rated contributions demanded by Defendants, and whether Defendants engaged in breaches of their fiduciary duty to plaintiffs and the Plan by recalculating the pro rated contributions retroactively and seeking increased contributions for class members to remain eligible to participate in the Lyon Plan and to receive benefits through the Program.

**ANSWER:  Defendants deny the allegations contained in paragraph 38.**

39.    The factual and legal claims of the named plaintiffs are typical of the claims of all members of the proposed class, thus satisfying the requirements of Fed. R. Civ. P. 23(a)(3).

**ANSWER:  Defendants deny the allegations contained in paragraph 39.**

40.    The named plaintiffs will fairly and adequately protect the interests of the proposed class, as required by Fed. R. Civ. P. 23(a)(4), and have retained experienced attorneys who are knowledgeable and skilled in litigation of this kind.

**ANSWER:  Defendants deny the allegations contained in paragraph 40.**

41.    Class certification is appropriate under Federal Rules of Civil Procedure 23(b)(2) in that the Defendants' actions affect all persons within the proposed class with respect to their claims that Defendants breached the Insurance Agreement and violated their rights under the Lyon Plan and under ERISA, making appropriate final declaratory and injunctive relief with

respect to the class.  Class certification would also be appropriate under Fed. R. Civ. P. 23(b)(1)(A), in that prosecution of separate actions by members of the proposed class would create a risk of inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for Defendants, and under Fed. R. Civ. P. 23(b)(3), in that the common issues predominate over the individual issues and a class action is superior to other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable, and because the expense and burden of the individual litigation substantially exceeds the potential loss or recovery of any individual plaintiffs, it would be impracticable for members of the proposed class to pursue individual litigation to vindicate their rights.

**ANSWER:  Defendant deny the allegations contained in paragraph 41.**

### CLAIMS FOR RELIEF

### COUNT I
**(Against Defendant Lyon by Plaintiffs Fields, Campbell, Pryor, and the Proposed Class)**

42.    Paragraphs 1-41 are incorporated by reference as though fully set forth herein.

**ANSWER:  Defendants reallege and incorporate their responses to paragraphs 1-41 in response to paragraph 42.**

43.    The 2005 Insurance Agreement negotiated by Defendant Lyon with USW Local 1636 is a contract between an employer and a labor organization representing employees in an industry affecting commerce, within the meaning of Section 301 of the LMRA.

**ANSWER:  Paragraph 43 calls for a legal conclusion to which no response is required.  Defendants, therefore, deny the allegations contained in paragraph 43.**

44.    Plaintiffs, as former employees of Defendant Lyon previously represented by USW Local 1636 are intended beneficiaries of the 2005 Insurance Agreement, are entitled to

benefits under the terms of the 2005 Insurance Agreement, and have standing to assert their rights under the 2005 Insurance Agreement.

**ANSWER:  Paragraph 44 calls for a legal conclusion regarding Plaintiff's standing or lack thereof to which no response is required.   Defendants deny the remaining allegations contained in paragraph 44.**

45.    The 2005 Insurance Agreement does not permit Lyon to base pro rated contribution amounts for the 2007 Program year on expenses incurred in years other than 2006, does not permit Lyon to recalculate the pro rated contributions more than once for the 2007 Program year, and does not permit Lyon to seek to charge any pro rated contributions in the 2007 Program year to retirees who did not participate in the Program in 2006.

**ANSWER:  Defendants deny the allegations contained in paragraph 45.**

46.    Defendant Lyon violated the 2005 Insurance Agreement in May of 2007, July of 2007, and August of 2007, be requiring plaintiffs Fields, Campbell, Pryor, and members of the proposed class to make payments above those set out in the March 2007 Letter, and by terminating the participating retirees' participation in the Lyon Plan and their eligibility for Program benefits when they failed to make the additional, improperly demanded, contributions.

**ANSWER:  Defendants deny the allegations contained in paragraph 46.**

47.    But for Defendant Lyon's violation of the 2005 Insurance Agreement, plaintiffs Fields, Campbell, Pryor, and members of the proposed class would have continued participating in the Lyon Plan.

**ANSWER:  Defendants deny the allegations contained in paragraph 47.**

48.    Defendant Lyon's violations are continuing as of the date of this Complaint and have caused damage to plaintiffs Fields, Campbell, Pryor and members of the proposed class.

**ANSWER:  Defendants deny the allegations contained in paragraph 48.**

49.    Members of the proposed class risk suffering irreparable injury if the contract violations are not remedied and they are not permitted to resume coverage under the Program at the $213.48 monthly rate set in the March 2007 letter.

**ANSWER:  Defendants deny the allegations contained in paragraph 49.**

**COUNT II**
**(Against Lyon Retiree Health Plan by Plaintiff Fields, Campbell, Pryor, and members of the Proposed Class)**

50.    Paragraphs 1-49 are incorporated by reference as though fully set forth herein.

**ANSWER:  Defendants reallege and incorporate their responses to paragraphs 1-49 in response to paragraph 50.**

51.    Plaintiffs, Fields, Campbell, Pryor, and the proposed class members are beneficiaries and/or participants of the Lyon Plan, which is an ERISA-covered health benefits plan.

**ANSWER:  Defendants admit that the plan at issue is a health benefit plan governed by ERISA.  Defendants deny the remaining allegations in paragraph 51.**

52.    Plaintiffs Fields, Campbell, Pryor, and the proposed class members have the right to participate in the component Program of the Lyon Plan according to the terms set forth in the 2005 Insurance Agreement, the plan document, and the Program SPD.  As of May 2007, Plaintiffs Fields, Campbell, Pryor, and members of the proposed class, were participants in the Lyon Plan and, were eligible to continue benefit coverage under the Program.

**ANSWER:  Defendants deny the allegations in paragraph 52.**

53.    Defendant Lyon violated the Plaintiff's rights under the Lyon Plan by denying plaintiffs and members of the proposed class the opportunity to continue participating in the

Lyon Plan and to maintain coverage under the Program by tendering the contributions set out in the March 2007 Letter, and by requiring plaintiffs to tender higher contribution rates in violation of the terms of the Program.

**ANSWER:  Defendants deny the allegations contained in paragraph 53.**

54.     By the actions of Defendant Lyon, the Lyon Plan has deprived or will deprive plaintiffs of benefits due to them under the terms of the Program, as the plaintiffs and class members have been forced out of the Plan due to their inability to pay the exorbitant and improper premiums now demanded by the Defendants, and now must pay the full cost of any coverage they are able to procure without any funding of the medical benefits by Lyon.

**ANSWER:  Defendants deny the allegations contained in paragraph 54.**

55.     Defendant Lyon's demand for and collection of improper contributions from plaintiffs, and its termination of coverage for plaintiffs and proposed class members who did not pay the improper premiums is actionable under Section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B), to recover benefits owed to plaintiffs and the members of the proposed class, to enforce their rights under the terms of the Program and Lyon Plan, and to clarify their rights to future benefits under the Lyon Plan and the Program.

**ANSWER:  Defendants deny the allegations contained in paragraph 55.**

### COUNT III
### (Against Defendant Lyon on behalf of Plaintiff Mosby)

56.     Paragraphs 1-55 are incorporated by reference as though fully set forth herein.

**ANSWER:  Defendants reallege and incorporate their responses to paragraphs 1-55 in response to paragraph 56.**

57.     Plaintiff Mosby, as a former employee of Defendant Lyon previously represented by USW Local 1636, is an intended beneficiary of the 2005 Insurance Agreement, is entitled to

benefits under the terms of the 2005 Insurance Agreement, and has standing to assert his rights to benefits under the 2005 Insurance Agreement.

**ANSWER:  Defendants deny the allegations contained in paragraph 57.**

58.    The 2005 Insurance Agreement does not authorize Lyon to seek to charge any pro rated contributions in the 2007 Program year to retirees who did not participate in the Program in 2006.

**ANSWER: Defendants deny the allegations contained in paragraph 58.**

59.    Defendant Lyon violated the 2005 Insurance Agreement in May of 2007 by requiring plaintiff Mosby to make payments as a condition of participating in the Program, even though Mosby did not participate in the Program in 2006 and, under the 2005 Insurance Agreement, could not be required to reimburse Defendant Lyon for expenses incurred by other participants in the 2006 Program year.  Defendant Lyon also violated the 2005 Insurance Agreement by refusing to permit Mosby to participate in the Program on the terms set out in the 2005 Insurance Agreement.

**ANSWER:  Defendants deny the allegations contained in paragraph 59.**

60.    Because of Defendant Lyon's breach of the 2005 Insurance Agreement, plaintiff Mosby was unable to participate in the Lyon Plan and to obtain medical and prescription drug benefits under the terms of the Program.

**ANSWER:  Defendants deny the allegations contained in paragraph 60.**

61.    Defendant Lyon's violation of the 2005 Insurance Agreement has caused plaintiff Mosby damages and continues as of the date of this Complaint.

**ANSWER:  Defendants deny the allegations contained in paragraph 61.**

## COUNT IV
(Against Lyon Retiree Health Plan by Plaintiff Mosby)

62.     Paragraphs 1-61 are incorporated by reference as though fully set forth herein.

**ANSWER:  Defendants reallege and incorporate their responses to paragraphs 1-61 in response to paragraph 62.**

63.     Plaintiff Mosby, as an eligible retiree of Defendant Lyon, has had, since May 2007, the right to participate in the component Program of the Lyon Plan according to the terms set forth in the 2005 Insurance Agreement, the plan document and the Program SPD.

**ANSWER:  Defendants deny the allegations in paragraph 63.**

64.     Defendant Lyon violated plaintiff Mosby's rights under the Lyon Plan by denying him the opportunity to begin to participate in the component Program of the Lyon Plan without cost, and by requiring him to make contributions set out in the May 2007 Letter, the July 2007 Letter and the August 2007 Letter in order to participate in the Program.

**ANSWER:  Defendants deny the allegations contained in paragraph 64.**

65.     By the actions of Defendant Lyon, the Lyon Plan has deprived plaintiff Mosby of benefits due to him under the terms of the Program.  Plaintiff Mosby has been required to pay the full cost of substitute insurance that offers different benefits from the benefits provided through the Program.

**ANSWER:  Defendants deny the allegations contained in paragraph 65.**

66.     Defendant Lyon's violation of plaintiff Mosby's rights under the terms of the Program and the Lyon Plan is actionable under Section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B), to enforce his rights under the terms of the Program and Lyon Plan, and to clarify his rights to future benefits under the Lyon Plan and the program.

**ANSWER:  Defendants deny the allegations contained in paragraph 66.**

## COUNT V
### (Against Lyon and L&D Group by all Plaintiffs, Pled in the Alternative to Counts I-IV)

67.     Paragraphs 1-66 are incorporated by reference as though fully set forth herein.

**ANSWER:  Defendants reallege and incorporate their responses to paragraphs 1-66 in response to paragraph 67.**

68.     Defendant Lyon is a fiduciary with respect to the Lyon Plan and the component Program within the meaning of ERISA § 2(21)(A), because it is the named Plan Administrator of the Lyon Plan, and because it exercises discretionary authority or discretionary control in the management and/or administration of the Plan or of Plan assets.

**ANSWER:  Defendants admit that Lyon was a fiduciary for at least some purposes under the Lyon Plan and that its discretionary authority included the matters alleged in the Complaint.  Defendants deny the remaining allegations contained in paragraph 68.**

69.     Defendant L&D is a fiduciary with respect to the Lyon Plan and the component Program within the meaning of ERISA § 2(21)(A) because, on information and belief, it exercises discretionary authority or discretionary control in the management and/or administration of the Plan or plan assets, or because it exercises *de facto* control over the Plan Administrator in its plan administration.

**ANSWER:  Defendants deny the allegations contained in paragraph 69.**

70.     As ERISA fiduciaries, Defendants Lyon and L&D are required to discharge their duties with respect to the plan solely in the interest of the participants and beneficiaries, including plaintiffs and the proposed class members, with the skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in conducting the affairs of the Lyon Plan and the component

Program, and in accordance with the plan documents insofar as consistent with their duties of prudence and loyalty.

**ANSWER:  Defendants deny the allegations contained in paragraph 70.**

71.    Defendants Lyon and L&D have breached their ERISA fiduciary duty in administering the Lyon Plan and the component Program, *inter alia*, by (a) imprudently and negligently failing to calculate properly the required amount of participant contributions for the years 2001-2006, and failing to timely and properly notify the appropriate participants in each those Program years of the correct amount of participant contributions required under the Program; (b) failing to collect appropriate participant contributions for the years 2001-2006 from the participants who allegedly owed contributions in each such Program year; (c) predicating continued participation in the Lyon Plan and eligibility for benefits under the component Program on payment by the named plaintiffs and the proposed class members to Lyon of alleged contribution shortfalls that Lyon and/or L&D failed, through their own imprudence, to calculate and collect for the benefit of the plan in the years 2001-2006, and which caused participants to be terminated improperly by Lyon from the Lyon Plan and caused Lyon improperly to raise costs for the remaining participants in the Program; and (d) encouraging participants to cease participation in the Program for the purpose of the reducing Lyon's obligation to fund the Program.

**ANSWER:  Defendants deny the allegations contained in paragraph 71.**

72.    Named plaintiffs and members of the proposed class have been harmed by Defendants Lyons and L&D's breaches of fiduciary duty, and the breaches of duty have caused plaintiffs to have their rights to retiree medical insurance for themselves and for their dependents under the Program improperly terminated.

**ANSWER:  Defendants deny the allegations contained in paragraph 72.**

73.    To the extent that plaintiffs' claims for benefits against the Lyon Plan do not permit plaintiffs and proposed class members to enforce their rights, Defendants Lyons and L&D are liable for harm caused to plaintiffs under ERISA §§ 409 and 502(a)(3).

**ANSWER:   Defendants deny the allegations contained in paragraph 73.**

74.    These violations by Defendants Lyon and L&D are continuing as of the date of this Complaint.

**ANSWER:  Defendants deny the allegations contained in paragraph 74.**

75.    Members of the proposed class risk suffering irreparable injury if Defendant Lyon and L&D's fiduciary breaches are not redressed.

**ANSWER:  Defendants deny the allegations contained in paragraph 75.**

**Prayer for Relief**

**WHEREFORE, Defendants pray that Plaintiffs take nothing by their Complaint, for the costs of this action, for attorney's fees, and for all other just and proper relief.**

**ADDITIONAL DEFENSES**

COME NOW Defendants, by counsel, and for additional defenses to Plaintiff's Complaint states as follows:

1.    Any allegation not specifically admitted, controverted or denied previously in this Answer is now denied.

2.    Plaintiffs' claims are barred as a result of their failure to exhaust their administrative remedies.

3.      L & D Group is not a proper defendant and the Complaint fails to state a claim upon which relief can be granted against it.

4.      The acts and determination of Defendants was not arbitrary and capricious and/or was otherwise in accordance with the terms of the employee benefit plan.

5.      Alternatively, the calculations of contributions and related activities were not fiduciary acts and are not subject to ERISA.

6.      Plaintiffs' claim for money damages under ERISA fails to state a claim upon which relief can be granted.

7.      Plaintiffs' claim under ERISA § 409 fails to state a claim upon which relief can be granted because relief is not sought on behalf of the plan.

8.      Plaintiffs failed to mitigate their alleged damages.

9.      Plaintiffs have unclean hands and are not entitled to equitable relief.

10.      To the extent the Complaint seeks to assert a claim for estoppel, the Complaint fails to state a claim upon which relief can be granted because there was no detrimental reliance.

11.      Plaintiff Mosby's are barred by the doctrine of waiver.

12.      Plaintiffs' Complaint and each purported claim in the Complaint fails to state a claim upon which relief can be granted.

13.      Defendants are entitled to a set-off and/or credit for any damage award as a result of contributions owed to the plan.

14.      Plaintiffs have failed to satisfy the prerequisites for class certification and therefore lack standing and cannot represent the interests of others.

15.     The types of claims alleged by the named Plaintiffs on behalf of themselves and the alleged class, the existence of which is expressly denied, are matters in which individual questions predominate and are not appropriate for class treatment.

16.     The class of persons that the named Plaintiffs purport to represent, the existence of which is expressly denied, is not so numerous that joinder is impracticable.

17.     The claims alleged by the named Plaintiffs are neither common to nor typical of those, if any, pertaining to the alleged class Plaintiffs purport to represent, the existence of which is expressly denied.

18.     Plaintiffs have not shown and cannot that class treatment of the claims alleged in the Complaint is superior to other methods of adjudicating the controversy.

19.     Certain of the interests of the group of plaintiffs proposed for class treatment are in conflict with the interests of all or certain sub-groups of the alleged class of persons which Plaintiffs purport to represent, the existence of which is expressly denied.

20.     The named Plaintiffs are inadequate representatives of any alleged class of persons they purport to represent, the existence of which is expressly denied.

21.     Plaintiffs are estopped from pursuing the claims in the Complaint, and each claim contained in the Complaint, by reason of their own actions and course of conduct.

22.     Plaintiffs have waived the right, if any, to pursue the claims in the Complaint, and each purported claim contained in the Complaint, by reason of their own actions and course of conduct.

23.     Defendant reserves the right to amend this Answer and Additional Defenses as discovery and investigation continue.

Respectfully submitted,

**Ogletree, Deakins, Nash, Smoak & Stewart, P.C.**
                Attorney for Defendant

 s/ Eric P. Mathisen
Mark E. Schmidtke 1733-45
Eric P. Mathisen, 19475-71
Two First National Plaza, 25th Floor
20 South Clark St.
Chicago, IL 60603
Tel: (312) 558-1220
Fx:  (312) 807-3619
mark.schmidtke@ogletreedeakins.com
eric.mathisen@ogletreedeakins.com

# COUNTERCLAIM

COME NOW Defendants/Counterclaimants, Lyon Workspace Products, LLC ("Lyon") and Lyon Workspace Products, LLC Hourly Retirees Health Plan ("Plan"), by counsel, and for their Counterclaim against Plaintiffs Alvin Fields ("Fields"), Allen Campbell ("Campbell"), and J.R. Pryor, Jr. ("Pryor"), state as follows:

1.      The Plan is an employee health benefit plan governed by the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C §§1101 *et seq*.  This Court has jurisdiction pursuant to 29 U.S.C. § 1132(e)(1).

2.      Lyon was the Plan administrator.  Lyon was also, at least for some purposes including pursuing a civil action, the Plan fiduciary.

3.      Fields, Campbell, and Pryor were participants of the Plan at various times from 2001 through 2007.

4.      Pursuant to the terms of the Plan, Lyon's liability and financial obligation was capped and the responsibility for any amounts over the cap were to be born by the participants and/or beneficiaries of the Plan.

5.      Lyon always complied with the terms of the Plan and paid or assumed liability and financial obligation up to the capped amount.

6.      The Plan has incurred claims and expense of more than $600,000.00 over the capped amount which have not been repaid to the Plan by Fields, Campbell, or Pryor.

7.      Fields, Campbell, and Pryor breached the terms of the Plan by failing to pay the amounts owed over the cap.

8.      Fields, Campbell, and Pryor were notified of the amounts owed, but they have failed and/or refused to repay the Plan.

9.      As a result of the breach by Fields, Campbell, and Pryor, the Plan's viability has been damaged.

10.     Fields, Campbell, and Pryor obtained benefits from the Plan and have been unjustly enriched.

11.     Lyon and the Plan are entitled to equitable relief and restitution pursuant to ERISA 29 U.S.C. §1132(a)(3).

**WHEREFORE,** Counterclaimants seek equitable relief, restitution, attorney's fees, the costs of this action, and all other just and proper relief.

Respectfully submitted,

**Ogletree, Deakins, Nash, Smoak & Stewart, P.C.**
Attorney for Defendant

 s/ Eric P. Mathisen
Mark E. Schmitdke 1733-45
Eric P. Mathisen, 19475-71
Two First National Plaza, 25th Floor
20 South Clark St.
Chicago, IL 60603
Tel: (312) 558-1220
Fx:  (312) 807-3619
mark.schmidtke@ogletreedeakins.com
eric.mathisen@ogletreedeakins.com

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney hereby certifies that on January 25, 2008, the foregoing **ANSWER TO**

**COMPLAINT** was filed electronically and was served via the Court's electronic filing system.

Service was also made via U.S. mail to:

|  |  |
|---|---|
| Robert W. Alexander | Todd Edelman |
| Bredhoff & Kaiser, PLLC | Bredhofff & Kaiser, PLLC |
| 805 15th Street, N.W. | 805 15th Street NW |
| Suite 1000 | Suite 1000 |
| Washington, DC 20005 | Washington, DC 20005 |

**Ogletree, Deakins, Nash, Smoak & Stewart, P.C.**
Attorney for Defendant

 s/ Eric P. Mathisen
Eric P. Mathisen, 19475-71
Two First National Plaza, 25th Floor
20 South Clark St.
Chicago, IL 60603
Tel: (312) 558-1220
Fx:  (312) 807-3619
eric.mathisen@ogletreedeakins.com