**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHER DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **Alvin Fields**, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 1:07-cv-6894 |
| | ) | Judge Joan H. Lefkow |
| **Lyon Workspace Products, LLC**, et al., | ) | |
| | ) | |
| Defendants. | ) | Jury Trial Demanded |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF**
**THEIR MOTION TO DISMISS DEFENDANTS' COUNTERCLAIM**

In this class action lawsuit, Plaintiffs challenge, under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1104, 1106, 1009, 1132(a), and Section 301 of the Labor Management Relations Act of 1947, as amended ("LMRA"), 29 U.S.C. § 185(a), Defendants' assessment of additional, retroactive contributions to participants in a retiree health care plan and their termination of Plaintiffs' coverage under the Plan for failure to pay the increased contributions demanded.

In responding to the Complaint, Defendants have filed a Counterclaim seeking more than $600,000 from three of the four named Plaintiffs, an amount which allegedly represents the unpaid health care contributions assessed against all plan participants. Defendants allege that they are entitled to reimbursement of this money, as a form of "equitable relief and restitution," under section 502(a)(3) of ERISA, 29 U.S.C. § 1 132(a)(3). As we will explain below, Defendants' Counterclaim should be dismissed under Federal Rule of Civil Procedure 12(b)(1) because this Court lacks subject

matter jurisdiction over the claim asserted therein, or, in the alternative, because the Counterclaim

fails to state a claim under Rule 12(b)(6).

## FACTUAL BACKGROUND

As set forth in detail in the Complaint, this case arises out of actions undertaken by

Defendants, in their role as fiduciaries of the "Lyon Plan," which provided health care coverage to

retirees of Lyon Workspace Products, LLC ("Lyon").   Under the Lyon Plan, Lyon's annual

contribution for retiree medical care costs was capped – at an amount calculated based on a formula

set forth in the collectively bargained Insurance Agreements – and amounts expended in excess of

the cap for any given year were, under the terms of the Insurance Agreements and plan documents,

to be shared on a *pro rata* basis by Plan participants in the next calendar year.  Compl. ¶¶ 14-23.

Thus, in February or March of each calendar year, participants were notified of their *pro rata* share

of the prior year's medical expenditures in excess of the capped amount.   Failure to pay that

contribution would, under the terms of the Plan documents, result in the participant's coverage being

terminated.  Compl. ¶ 19.

In March of 2007, Lyon notified plan participants, including Plaintiffs, of the total medical

care expenses incurred by the Lyon Plan in 2006 and identified the *pro rata* share –  $213.42 per

month – that each of the current plan participants would have to contribute in order to maintain

coverage under the Plan.  Compl. ¶ 24-25.  That was fully in accord with the Insurance Agreements

and Plan documents.  But two months later Lyon began to demand ever-escalating additional

payments from Plan participants as a condition of their continued participation in the Plan.

In May, Lyon sent a letter to participants notifying them that Lyon had recently conducted an audit and had found a shortfall in moneys paid to the Lyon Plan as far back as 2001.  Compl. ¶¶ 27-28.  Accordingly, Lyon demanded an additional contribution, in the form of a $3,376.28 lump sum, from plan participants in order to maintain coverage under the plan.  *Id.*  In July, Lyon sent yet another letter notifying participants that their *pro rata* contribution had again been recalculated due to the decrease in plan enrollment that had been a result of the May demand; if participants wished to continue in the Plan, the July letter asserted, their monthly contribution would now be $779.77 per month (in addition to increased retroactive payments for prior months).  Compl. ¶ 32. Unsurprisingly, an even larger number of participants was unable or unwilling to make these increased payments, and in August Lyon notified the remaining plan participants that Lyon again had recalculated the prorated contributions owed by each participating retiree on account of the further decrease in plan enrollment and that to maintain coverage each retiree would now be required to pay $3,692.93 per month.  Compl. ¶ 34.

As a result of these successive increases in participant contributions demanded by Lyon, no participants remain in the Lyon Plan, as coverage for all former participants was terminated by Lyon for non-payment.  Accordingly, Lyon has been able to rid itself of all future retiree health care expenses.

In its Counterclaim, Lyon, as the plan fiduciary, now asserts that it is entitled to recover from three of the individual Plaintiffs more than $600,000, which allegedly represents the total incurred

claims and expenses beyond the capped amounts that have not been repaid to the plan. Counterclaim ¶ 6.[1]

## ARGUMENT

In essence, Defendants' Counterclaim asks this Court to penalize Plaintiffs for bringing this suit by requiring three of the plaintiffs, former plan participants, to pay $600,000 in allegedly uncollected medical costs incurred by the entire plan between 2001 and 2006. There is simply no legal basis under ERISA for such an audacious claim.

Whether framed as a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) or for failure to state a claim under Rule 12(b)(6), the standard is in essence the same. *Ezekiel v. Michel,* 66 F.3d 894, 897 (7th Cir. 1995). Although the Court must accept as true all well-pleaded factual allegations in the complaint (or counterclaim) and the inferences reasonably drawn from them, *see Baxter by Baxter v. Vigo County Sch. Corp.,* 26 F.3d 728, 730 (7th Cir. 1994), the Court need not ignore facts set out in the complaint (or counterclaim) that undermine a plaintiff's claims, *see Homeyer v. Stanley Tuichin Assocs.,* 91 F.3d 959, 961 (7th Cir. 1996). Nor is the Court required to accept a plaintiff's legal conclusions. *See Reed v. City of Chicago,* 77 F.3d 1049, 1051 (7th Cir. 1996); *see also Panaras v. Liquid Carbonic Indus, Corp.,* 74 F.3d 786, 792 (7th Cir. 1996).

---

1    The Counterclaim makes this assertion notwithstanding that in correspondence sent by Lyon to the Plan participants in 2007, Lyon expressly told participants that they were required to pay the increased contributions only if they wanted to maintain coverage in the Plan. *See* Compl. Ex. F at 3 ("you must make your catch-up and continuing contribution to maintain your coverage"); Compl. Ex. G at 2 (same).

Applying that standard here, it is clear that Defendants' Counterclaim, which is asserted under section 502(a)(3) of ERISA, should be dismissed. First, this Court lacks subject matter jurisdiction over Defendants' Counterclaim because the relief sought is not equitable in nature. Second, in the alternative, the Counterclaim fails to state a claim because Defendants are unable to identify any term of the Lyon Plan violated by Plaintiffs.

I.    **This Court lacks subject matter jurisdiction over Defendants' Counterclaim because the relief sought is legal, not equitable, in nature.**

Under the plain language of section 502(a)(3), a plan fiduciary, such as Lyon, may only recover "other appropriate equitable relief" to redress violations of the plan. 29 U.S.C. § 1132(a)(3); *see also Wal-Mart Stores, Inc. Assocs.' Health and Welfare Plan v. Wells,* 213 F.3d 398, 400-401 (7th Cir. 2000) ("We must consider whether the relief sought by the plan is equitable, because that is the only type of relief that ERISA authorizes a fiduciary to obtain"). For this reason, a court will not have subject matter jurisdiction over a claim if the party is seeking legal, as opposed to equitable, relief. *Mertens v. Hewitt Assocs.,* 508 U.S. 248, 255-62 (1993).

Here, Defendants' Counterclaim seeks to recover "incurred claims and expense of more than $600,000 over the capped amount which have not been repaid to the Plan by Fields, Campbell, or Pryor." Counterclaim ¶ 6. Under clear Supreme Court precedent, recovery of the $600,000 allegedly owed by the Plaintiffs is legal, not equitable, in nature.

In *Great-West Life & Annuity v. Knudson,* 534 U.S. 204 (2002), the Supreme Court was presented with the question of whether section 502(a)(3) of ERISA authorized a suit by a health plan to recover from the plan participants proceeds from a third party – specifically, settlement proceeds from a car accident that rendered Plaintiff a paraplegic – where the plan expressly gave it the right

to recover payment for benefits that a participant was entitled to recover from a third party.  In

concluding that ERISA did not authorize such a suit, the Supreme Court held that suits seeking "to

compel the defendant to pay a sum of money to the plaintiff are suits for 'money damages,' . . . since

they seek no more than compensation for loss resulting from the defendant's breach of legal duty."

534 U.S. at 210; *see also, e.g., Leipzig v. AIG Life Ins. Co.,* 362 F.3d 406, 410 (7th Cir. 2004)

(affirming dismissal for want of subject matter jurisdiction where "AIG wants money, not the return

of the checks it issued to Leipzig or the contents of a segregated fund," as *"Great-West* rejected the

possibility of applying the 'restitution' label to demands of this kind").

In reaching this conclusion, the Court rejected any reliance upon the plaintiffs'

characterization of the relief as equitable rather than legal.  534 U.S. at 211 n.1; *see also Primax*

*Recoveries, Inc. v. Sevilla,* 324 F.3d 544, 548 (7th Cir. 2003) ("Almost any legal claim can be given

the *form* of an equitable claim (that is, a claim seeking an order to do or not do something), but such

games with form should be discouraged").  Instead, the Court held that "legal" restitution exists in

"cases in which the plaintiff 'could not assert title or right to possession for particular property, but

in which nevertheless he might be able to show just grounds for recovering money to pay for some

benefit the defendant had received from him."  534 U.S. at 213.  In contrast, restitution is an

equitable remedy where "money or property identified as belonging in good conscience to the

plaintiff could clearly be traced to particular funds or property in the defendant's possession." *Id.*

In this case, the Counterclaim does not assert – and could not assert consistent with Rule 11 –

that the money allegedly owed to the Lyon Plan can be "traced to particular funds or property" in

Plaintiffs' possession.  Indeed, the entire premise of the counterclaim is that the money allegedly

owed was never paid.  Thus, under the controlling Supreme Court and Seventh Circuit precedent,

-6-

the Counterclaim's "claim" is not one for equitable relief and cannot be brought under Section 502(a)(3)[2]. *See also, e.g., Wells,* 213 F.3d at 400-401 ("A claim for money due and owing under a contract is 'quintessentially an action at law'").

## II.    In the alternative, Defendant's Counterclaim should be dismissed for failure to state a claim.

In addition to lacking subject matter jurisdiction under ERISA, Defendants' Counterclaim also fails to state a claim under Federal Rule of Civil Procedure 12(b)(6).  The Counterclaim asserts that plaintiffs Fields, Campbell, and Pryor violated section 502(a)(3), which provides a cause of action to redress, *inter alia,* violations of "the terms of the plan," 29 U.S.C. § 11 32(a)(3), by "failing to pay the amounts owed over the cap."  Counterclaim ¶¶ 7, 11.  Plaintiffs' bare conclusory assertion that failing to pay the $600,000 allegedly owed "breached the terms of the Plan," Counterclaim ¶ 7, however, fails to state a claim.

There is nothing in the terms of the relevant plan document that would support Defendants' unstated assertions (i) that Plaintiffs have any obligation to pay contributions after they have ceased participating in the plan, or (ii) that Plaintiffs, either jointly or severally, would be obligated to pay the total amount in excess of the cap (as opposed to each individual's *pro rata* share).  Notably,

---

2    A number of District Courts have reached similar results when presented with a claim by a plan fiduciary to recover moneys allegedly owed by plan participants.  *See, e.g., Eldridge v. Wachovia Corp. Long-Term Disability Plan,* 383 F. Supp. 2d 1367, 1372 (N.D. Ga. 2005) (dismissing plan's restitution claim based on alleged duplicative payment received by plan participant because such relief was not equitable since the plan "do[es] not allege the existence of any specified, identifiable funds presently controlled or possessed" by plaintiff); *Unum Life Ins. Co. ofAmerica v. Grourke,* 406 F. Supp. 2d 524 (M.D. Pa 2005) (claim to recover retroactive Social Security Disability Insurance Benefits denied because legal relief sought); *The Verizon Employee Benefits Comm. v. Adams,* 2006 WL 66711 (N.D. Tex. Jan. 11, 2006) (claim for overpayment of pension benefits dismissed because equitable relief not sought).

Defendants' Counterclaim does not cite any portion of the summary plan description (or other plan document) as supporting its assertion that Plaintiffs have violated the terms of the plan. Indeed, no such citation exists. As the summary plan document, which was attached to Plaintiffs' Complaint as Exhibit C, makes clear, the only individuals who are required to make a contribution are "all current retirees with coverage," and that contribution is only necessary "in order to maintain coverage." Ex. C at § 3.[3] Nothing in the plan document suggests either that the plan may seek contributions from former participants or that an active participant is responsible for the contributions owed by the group as a whole.

Accordingly, Defendants are unable to state a claim under section 502(a)(3).


**CONCLUSION**

For the foregoing reasons, Defendants' Counterclaim should be dismissed for lack of subject matter jurisdiction, or, in the alternative, for failure to state a claim.


Respectfully submitted,

CORNFIELD AND FELDMAN

CORNFIELD AND FELDMAN            By:    /s/ Stephen A. Yokich
Suite 1400                                   Stephen A. Yokich
25 East Washington Street
Chicago, IL  60602-1803
(312) 236-7800
(312) 236-6686 (fax)

---

3    Consideration of the substantive terms of the summary plan document is appropriate because the Counterclaim references the Plan throughout its Counterclaim and the terms of the Plan are central to the Counterclaims' claim. *See 188 LLC v. Trinity Indus., Inc.,* 300 F.3d 730, 735 (7th Cir. 2002).

BREDHOFF & KAISER, P.L.L.C.

BREDHOFF & KAISER, P.L.L.C.            By:    Robert Alexander, Esq.
Suite 1000                                    Todd E. Edelman, Esq.
805 Fifteenth Street, N.W.
Washington, DC   20005-2207
(202) 842-2600
(202) 842-1888 (fax)
                                       Attorneys for Plaintiffs

Dated:  March 21, 2008

## CERTIFICATE OF SERVICE

Stephen A. Yokich, an attorney, hereby certifies that on March 21, 2008, he caused the foregoing to be filed electronically with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

> Mark E. Schmidtke, Esq.
> Eric P. Mathisen, Esq.
> OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
> Suite 2500
> Two First National Plaza
> 20 South Clark Street
> Chicago, Illinois   60603
>
> A. Craig Cleland, Esq.
> OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
> Suite 2100
> 600 Peachtree Street NE
> Atlanta, Georgia  30308

and further certifies that on March 21, 2008, he caused the same document to be served upon the following nonregistered participants by U.S. Mail, first-class postage prepaid and addressed as shown below:

> None.

> /s/ Stephen A. Yokich
> Stephen A. Yokich